Donald B. Semple v. Commissioner. Vivian H. Semple v. Commissioner.
Semple v. Commissioner
Docket Nos. 25780, 25781.
United States Tax Court
1951 Tax Ct. Memo LEXIS 124; 10 T.C.M. (CCH) 795; T.C.M. (RIA) 51263; August 28, 1951
Donald B. Smith, Esq., E-1422 First Nat. Bank Bldg., St. Paul, Minn., for the petitioners. Thos. A. Steele, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax and imposed penalties thereon for the calendar years 1945, 1946 and 1947, as follows: Income
Year
Tax
Penalty
1945
$275.00
$137.50
1946
709.01
354.51
1947
917.13
458.57
All of the above are based upon income earned and deductions claimed by petitioner, Donald B. Semple. Petitioner, Vivian H. Semple, was his wife in 1947 only, and her liability, if any, rests upon her proportionate ownership of his income in that year. The issues presented for our decision *125 are these: Did the Commissioner err in disallowing deductions as follows: (1) Automobile travel and entertainment expenses for the year 1945 in the total amount of $425; in 1946 for $700, and for 1947, $1,050. (2) Alleged alimony payments for 1946 in the amount of $775, and for 1947 in the amount of $1,240. (3) Interest payments claimed for the year 1947. (4) Contributions claimed for the year 1947. (5) A fifth issue is the 50 per cent fraud penalty imposed by Commissioner under section 293(b) of the Internal Revenue Code. Other adjustments by respondent petitioners now concede as correct. Findings of Fact Donald B. Semple, hereinafter referred to as "petitioner", aged 40 years, resides in Minneapolis, Minnesota, and has resided in the twin city area (Minneapolis and St. Paul) for 35 years. He filed income tax returns for the years here involved with the collector of internal revenue for the district of Minnesota at St. Paul, as follows: For 1945 he and his then wife, Margaret Semple, filed a joint return; for 1946 he filed a single return, and for 1947 he and his then wife, petitioner Vivian H. Semple, whom he married in December, 1946, filed *126 a joint return. Petitioner is a high school graduate; he has had two part terms in night schools at the University of Minnesota, plus some correspondence courses. Continuously from 1940, including the years 1945, 1946 and 1947, and thereafter, petitioner has been an employee of Sears, Roebuck and Company, hereinafter called "Sears". Automobile and Entertainment Expenses Beginning in June, 1945, and throughout 1946 and 1947 petitioner was mail order sales manager of Sears for certain territory covering several states adjacent to the twin city area, with headquarters in Minneapolis. His duties were projecting the expected annual sales, purchasing by types the required catalogues from the parent organization in Chicago, planning the distribution of the catalogues, supervising the stores in his area which are strictly catalogue stores, and some public relations work. Petitioner was required to travel some in his territory. Sears reimbursed him for travel and entertainment expenses incurred by him "in a reasonable amount", except those incurred in the immediate twin city area. In creating good will for Sears and in the promotion of its business, petitioner occasionally visited *127 local chambers of commerce, business men's clubs, 4-H clubs, and at these and other places in and out of the twin city area he expended sums for entertainment such as buying an occasional lunch or drink for business associates, employees working under him, or heads of other firms with which Sears was doing business, giving Christmas party for his employees, etc. In some business trips for Sears outside the twin city area petitioner expended sums in excess of amounts reimbursed by Sears, but the record is indefinite and uncertain both as to the nature and amount of such expenditures. Sears did not reimburse petitioner for automobile travel in the immediate twin city area, nor ordinarily for sums expended by him for business entertainment in that area. Petitioner used his automobile some in Sears' business in that area, but the record fails to show the extent to which the automobile was used. Petitioner expended some sums for business entertainment in the twin city area, but the record does not show definitely or satisfactorily what these amounts were, nor in all instances the purposes for which such sums were spent. Reimbursement vouchers show that Sears reimbursed petitioner for *128 business expenses to the extent of $642.69 in 1945, $1,457.95 in 1946, and $1,385.98 in 1947. Among items included therein were transportation, hotel room, meals, guest meals, valet services, taxicabs, tips, phone calls, telegrams, etc. Petitioner in his income tax returns claimed to have expended additional sums for travel and entertainment for which he was not reimbursed, as follows: In 1945, automobile $50, entertainment $375, total $425; in 1946, automobile $100, entertainment $600, total $700; in 1947, automobile $270, entertainment $780, total $1,050, all of which claimed deductions were disallowed by the Commissioner in his notice of deficiency. Petitioner expended for ordinary and necessary business expenses, for which he was not reimbursed by Sears, as follows: In 1945, automobile $50, entertainment $125; in 1946, automobile $75, entertainment $300; in 1947, automobile $100, entertainment $300. The Alimony Issue Petitioner married Margaret on September 2, 1933, and was divorced from her August 29, 1946, by the decree of the District Court of Carver County, Minnesota, in which divorce suit she was plaintiff and he was defendant, and both were represented by counsel, *129 but there was no contest. That part of the divorce decree dated August 29, 1946, dealing with alimony and property rights provided as follows: Paragraphs II to V, inclusive, in effect awarded to Margaret: (II) All household goods and furnishings of the parties then in her possession, he to pay any indebtedness due thereon; (III) all war bonds belonging to the parties; (IV) he to continue in effect, while she was unmarried, a $5,000 policy on his wife, she being the beneficiary therein; (V) certain real estate therein described as her separate property. The remaining portion of the decree being as follows: "VI. "That defendant pay to plaintiff as and for an additional property settlement, the sum of One Thousand, Eight Hundred and Sixty Dollars ($1,860.00) payable on or before one (1) year from the date of this entry of this decree, but in no event in payments of less than One Hundred Fifty-five Dollars ($155.00) per month, payable on the 1st and 15th day of each month following the entry of this decree. "VII. "The above provisions relative to property settlement are entered into in part because of the cash contribution of the plaintiff of the sum of approximately Five *130 Thousand Dollars ($5,000.00) to a motor freight business of the defendant. "VIII. "That defendant shall pay to the plaintiff commencing with the period of one (1) year from the entry of the decree alimony in the amount of One Hundred Twenty-five Dollars ($125.00) per month and for a period of one (1) year and commencing two (2) years from the date of entry of the decree the sum of One Hundred Dollars ($100.00) per month as long as plaintiff is unmarried. Said payments shall be paid on the first and 15th day of each month in equal amounts and shall continue as long as the plaintiff lives and has not remarried. "IX. "That defendant shall pay attorney's fees in the amount of One Hundred Fifty Dollars ($150.00) incurred by the plaintiff, together with the costs of this action. "The above provisions and payments shall operate as full release and satisfaction of any claims of any kind on the part of either party against the other arising out of alimony, support money or otherwise." The above decree was based upon and in conformity with the terms of a written agreement herein called "stipulation" dated August 28, 1946, which was signed by the parties and their respective attorneys, *131 and same was filed with the court at the time the divorce was granted. [1]
Prior to the execution of the stipulation there had been some discussion between Margaret and petitioner as to the settlement. The stipulation was prepared by Margaret's attorney who gave it to petitioner to sign, but petitioner wanted to submit it to his attorneys before signing, and later in the day petitioner returned the stipulation, duly signed by him and his attorneys, with one suggested change, viz: in paragraph 7 of the stipulation (which is identical with paragraph VIII of the decree) by an interlineation he inserted the words "as long as plaintiff is unmarried", so that no alimony would be due after her marriage, which change was accepted and incorporated in the stipulation and became a part of the decree. Complying with paragraph VI of the decree, (which is the same as paragraph 5 of the stipulation) petitioner made payments to Margaret of $155 per month. Margaret was married to John Harvey on March 6, 1947, but petitioner continued to pay her *132 $155 per month until the sum of $1,860 was paid her within 12 months from the date of the decree. During their married life Margaret did contribute to petitioner approximately $5,000 in cash for living expenses and for a trucking business acquired by him. This business he later incorporated and Margaret was given stock therein, but she received no salary or returns therefrom. Petitioner in his income tax returns claimed deductions for alimony paid of $775 in 1946 and $1,240 in 1947, both of which were disallowed by the Commissioner in his notice of deficiency on the ground that such payments were not alimony, but property settlements. In October, 1946, petitioner made in the copy of divorce decree in his possession a penciled alteration of paragraph VIII, whereby alimony payments therein would begin within "one month" rather than "one year" from the date of the decree, and changed such monthly payments from " $125" to " $175". He did this after his divorced wife told him she was going to remarry, and that an inspection of the divorce decree would disclose that he would be required to continue payments to her after her remarriage. In the summer of 1948 the Bureau of Internal *133 Revenue began an investigigation of petitioner's income tax returns, and when the agent of the bureau asked petitioner to produce a copy of the divorce decree, he claimed that he had sent it to Chicago. Shortly thereafter he traced with ink the alteration he had made in paragraph VIII and had his secretary make a typewritten copy of the entire decree containing the alteration he had made which he gave to the government agent as a correct copy. On June 20, 1950, after petitioner had ceased to, or was required to, make payments under the divorce decree, but while this proceeding was pending in the Tax Court and some four months prior to the hearing herein, petitioner for the first time initiated proceedings in the District Court of Carver County, Minnesota, to have the divorce decree amended nunc pro tunc, as he alleged, "to correctly designate the cash payments" made to his wife "as alimony payments and not as a property settlement". In his affidavit attached to the motion to amend petitioner stated that he was not represented by counsel in the divorce case and that the $155 monthly payments for twelve months, aggregating $1,860, "were alimony payments and not property settlement *134 payments". On July 12, 1950, the District Court amended nunc pro tunc the original decree of divorce, and all provisions therein relating to payments by petitioner to Margaret, as contained in the amended decree, are as follows: "VII "That defendant pay to plaintiff as and for alimony, commencing with the month of September, 1946, the sum of One Hundred Fifty-five ($155.00) Dollars per month for a period of one (1) year; thereafter the sum of One Hundred Twenty-five ($125.00) Dollars per month for a period of one (1) year; and thereafter, the sum of One Hundred ($100.00) Dollars per month until such time as plaintiff may remarry. That as further alimony, defendant shall pay, when and as due, any indebtedness or encumbrance upon any of the furniture or furnishings of the parties awarded to the plaintiff by paragraph II hereof." The stipulation filed in the district court when the divorce was granted bears petitioner's own signature and also that of his attorneys, "Ossana & Kotrich." That law firm, on October 1, 1946, charged him $300 for representing him in the divorce case, which he claimed as a deduction in his 1946 income tax return, but it was disallowed as a personal expense. *135 No part of this fee was paid until 1949 when it was compromised for $150. Petitioner prepared his income tax returns for the years in question. His knowledge of income tax law was limited and he did not clearly understand for income tax purposes the difference between alimony and property settlement. In making his return for 1947 he bought a booklet entitled "Your Income Tax," but its reading did not fully clarify his mind on this subject. Interest and Charitable Contribution Deductions Petitioner, in his return for 1947, claimed a deduction for interest paid by him in that year aggregating $582.21, itemized as follows: Northwestern National, $90.30; Minnesota Federal Savings & Loan, $400.53; Prudential Life Insurance, $68.48; Anton Hanson Real Estate, $22.90. Petitioner also claimed deduction of $75 in his 1947 return for a charitable contribution made by him to the Community Chest in that year. The above claimed deductions were not challenged by respondent in his original notice of deficiency, but at the trial respondent was permitted to amend his pleading so as to include each and all of them as being disallowed by the respondent, on the ground that petitioner did not make *136 such payments or contributions in that year in the amounts claimed. The total amount of interest paid by petitioner in 1947 for which deduction is allowable is the sum of $132.11. The total amount of contribution made by petitioner to the Community Chest in 1947 is the sum of $75. Petitioner claimed deductions for other contributions to charity in 1947, all of which are approved since respondent offered no evidence thereon. Opinion The respondent has disallowed deductions from petitioner's taxable income for amounts petitioner claims to have expended in the taxable years for business expenses covering entertainment and automobile travel. The sums in dispute are those petitioner claims to have expended in excess of amounts for which he was reimbursed by Sears. Sears was to reimburse petitioner for all travel and entertainment expenses incurred by him outside of the twin city area, and the record shows that Sears did in each of the years involved expend rather substantial sums for this purpose. Petitioner was not reimbursed for automobile travel and entertainment expenses incurred in the twin city area, Sears being under no obligation to pay same. On one occasion, however, Sears *137 did reimburse petitioner for entertainment expenses incurred in the twin city area. We have found that in each of the taxable years petitioner did expend, both in and outside the twin city area, sums for business entertainment for which he was not reimbursed. Undoubtedly he used his automobile in connection with his business activities in each of the taxable years. He gave no indication of how many miles he drove his automobile or how many miles it would carry him on a gallon of gasoline. The record as a whole is grossly lacking in definiteness as to the amounts which petitioner actually expended and for which deductions are here sought. The amounts of such expenditures in each of the taxable years are vague, indefinite and uncertain. He kept no record of these expenditures worthy of the name, and the evidence reveals that the amounts claimed in each year are merely petitioner's estimates or guesses, unsupported by corroborative evidence. The number and names of persons entertained, the places or frequency of such entertainment and the cost of entertainment are all lacking. For 1945 he kept no record. For 1946 he produced a booklet which he admitted was not an accurate and complete *138 record. The items therein he admitted were not entered at the time the expenses were incurred, but in many instances long afterward, and they were mingled with expenses for which he was reimbursed. The booklet for 1947 was of no probative value whatever. It consisted of figures only, with no writing to identify what they were for and for what expenditures, if any, they were made. Unable to determine the amount of the expenditures in question, we have applied the rule of Cohan v. Commissioner, 39 Fed. (2d) 540. In our findings of fact we have reached an approximation on the two items of expenditures and after consideration of all the evidence, we have found and hold that petitioner expended for ordinary and necessary business expenses for entertainment and automobile travel the total sums of $175 in 1945, $375 in 1946 and $400 in 1947, which amounts under section 23 (a) (1) of the Internal Revenue Code are deductible respectively in each of said years. Cf. James Schulz, 16 T.C. 401; Sam D. Hecht, 16 T.C. 891 (promulgated May 9, 1951). Concerning the alimony issue, we sustain respondent's determination. Payments of $155 *139 monthly to petitioner's wife in 1946 and 1947 by petitioner did not constitute alimony as he claims, but all such payments were property settlements and hence not deductible. These payments were made in compliance with paragraph 5 of the stipulation and paragraph VI of the court's decree, and in each petitioner was obligated to pay the sum of $1,860 within twelve months at the rate of $155 per month, which sum was expressly designated as "an additional property settlement." Provisions for alimony payments of $125 a month were contained in paragraph 7 of the stipulation and paragraph VIII of the court's decree, but the record fails to show that petitioner ever made any payments of this kind or in this amount. Undoubtedly, under the stipulation of the parties to the divorce suit and the decree of the court based thereon, the amounts in question were not alimony. Petitioner seeks to avoid the effect of these and now relies upon an amended judgment entered nunc pro tunc some four years later, wherein the original decree was changed so that the payments here in question were designated "alimony" rather than "property settlement." The amended decree was made upon motion of petitioner *140 long after all payments had ceased to be made under the decree and the property rights of the parties to the divorce case had been fully settled. Petitioner's action was obviously for the purpose of affecting the decision in this case. We do not know upon what evidence the court amended its decree, but we do know that petitioner's motion to amend falsely alleged that he had no counsel in the divorce case, and the designation in the amended decree of the payments in question as "alimony" is not supported by the evidence adduced before us. We refuse to be bound by the amended decree. In Robert L. Daine, 9 T.C. 47, the taxpayer sought to change the terms of an original decree by having it amended nunc pro tunc,.nwhich amended decree we refused to accept, and the Second Circuit affirmed our action in so doing, Daine v. Commissioner, 168 Fed. (2d) 449. The Appellate Court, after reviewing the authorities on the question of whether or not the Tax Court should be bound by a nunc pro tunc judgment, said: "* * * hence it is clear that the retroactive judgments of state courts do not determine the rights of the Federal Government under its tax laws * * *," citing *141 numerous authorities. See also Peter Van Vlaanderen, 10 T.C. 706, affd. (C.A. 3) 175 Fed. (2d) 389. We have reduced the claimed deduction of $582.21 for interest paid in 1947 to $132.11, since the remainder claimed was not paid until 1948. The evidence is in conflict as to the $75 Community Chest contribution, and since respondent has the burden of proof on this issue, we have reversed his disallowance of same. We reverse respondent's imposition of the 50 per cent fraud penalty. We do not think he has met his burden of proof "by clear, cogent and convincing evidence" that at the time petitioner made his income tax returns for the taxable years in question, he willfully, falsely and with intent to defraud prepared and executed same. It is the return itself which is the basis of the imposition of the penalty. John B. Arnold, 14 B.T.A. 954. Subsequent conduct of the taxpayer, after making the return, even though reprehensible, will not justify the imposition of the penalty, unless the fraudulent intent is shown to have existed when the return was made. Petitioner kept no books of record and in the preparation of his returns displayed considerable *142 negligence and inaccuracy, yet it has been held that "negligence, whether slight or great, is not equivalent to the fraud with intent to evade the tax named in the statute." Mitchell v. Commissioner, 118 Fed. (2d) 308. The imposition of a negligence penalty was not sought by respondent. Decisions will be entered under Rule 50. Footnotes
1. The property awarded to Margaret in the stipulation and the decree was all property owned by petitioner except his clothing and personal effects.↩